IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| SHELLEY DRESCHER,<br><br>        Plaintiff,<br>vs.<br><br>CLINTON CITY, a municipality;<br>CLINTON FIRE DEPARTMENT; DAVID<br>OLSEN; JASON POULSON; FLOYD<br>PETERSEN; and JUSTIN BENAVIDES,<br><br>        Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No.  1:15-CV-32-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Clinton City, Clinton Fire Department,

David Olsen, Jason Poulson, Floyd Petersen, and Justin Benavides's Motion for Summary

Judgment. A hearing on the matter was held on March 1, 2017. At the hearing, Plaintiff was

represented by Michael Studebaker. Defendants were represented by Maralyn English. Before

the hearing, the court carefully considered the memoranda and other materials submitted by the

parties. Since taking the matter under advisement, the court has further considered the law and

facts relating to the matter. Now being fully advised, the court renders the following

Memorandum Decision and Order.

## BACKGROUND

Plaintiff Shelley Drescher was hired as a part-time, on-call firefighter by the Defendard

Clinton City in 2008. Defendant Clinton Fire Department is a department of Clinton City.

Defendants David Olsen, Jason Poulson, Floyd Petersen, and Justin Benavides are employees of

Clinton City.

In January 2011, Clinton City had testing for a full-time firefighter position. Ms. Drescher and four other people tested for the position. Ms. Drescher placed fifth out of five applicants, and two of the higher-scoring applicants were hired as full-time firefighters. In September 2012, Clinton City tested for a full-time firefighter position again. Ms. Drescher applied but her scores were lower than Brad Jensen, who was promoted into the position on October 1, 2012.

On February 19, 2013, Ms. Drescher's employment was terminated for actions which hinder the effective performance of Clinton City functions or reflect discredit upon Clinton City, for bringing personal problems into the workplace that impact the Fire Department, for conduct unbecoming a firefighter, and for being dishonest. The termination decision was based on several events. First, between 2010 and 2013, the Clinton Police Department was called to the Drescher's home on several occasions due to domestic problems between Ms. Drescher and her husband, who is a full-time firefighter with Clinton City. On December 7, 2012, the Deputy Chief of the Clinton Fire Department directed Ms. Drescher to keep her personal problems outside of work because Mr. Drescher had asked that she be told to stop calling him at work after she called the station repeatedly asking for her husband during the previous week. One week later, Ms. Drescher's husband came to the fire station while he was off work to discuss an issue with the Deputy Chief, and, during the discussion, Ms. Drescher had her mother drive her to the station and drove away in the car Mr. Drescher had driven to the station. On February 13, 2013, Clinton Police and Clinton Fire responded to a report from one of Ms. Drescher's co-workers at Davis Hospital that Ms. Davis had threatened suicide. Ms. Drescher's husband was one of the firefighters who responded, and, because she was so intoxicated, Ms. Drescher's husband had to stay with her and had to have the Fire Chief cover his shift for the night.

In October 2012, Clinton City received an email from Ms. Drescher's other part-time employer, Davis Hospital, stating that Ms. Drescher had told them that she could not work at the hospital on Thanksgiving, Christmas, and New Year's because she was scheduled to work all three of those holidays at the fire station, but Ms. Drescher was not scheduled to work at the fire station on any of those holidays.

In February 2013, the Fire Chief heard rumors that a Davis County Sheriff Deputy had attempted suicide because he had fathered a child with Ms. Drescher. According to the rumors, the Deputy had been paying Ms. Drescher child support under the table, Ms. Drescher pressured him to pay more, and, when the Deputy said that he couldn't, Ms. Drescher went to the Deputy's wife and told her about the affair and the child. The Fire Chief contacted the Sheriff on February 15, 2013, to check the accuracy of the rumors, and the Sheriff told the Fire Chief that the Deputy had written a suicide note confirming the statements the Fire Chief had heard. Mr. Drescher was apparently unaware of the affair and the potential that the child might not be his, and Ms. Drescher denied everything when she was confronted about what had occurred.

On November 7, 2016, Defendants filed a Motion for Summary Judgment asking the court to grant summary judgment in their favor on all claims asserted by Ms. Drescher. Ms. Drescher responded, and Defendants filed a reply.

## DISCUSSION

Defendants move for summary judgment on all of Ms. Drescher's claims because Defendants argue that Ms. Drescher has failed to meet her burden of establishing a prima facie case on each of her claims and, to the extent she succeeded in establishing a prima facie case, she failed to show that Clinton City's proffered reasons for its employment decisions were pretextual. Ms. Drescher argues that summary judgment in favor of Defendants is not

appropriate because too many issues are in dispute regarding whether Ms. Drescher's rights

under Title VII have been violated. The court will address these arguments below.

## STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, other discovery

materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law." *Sally Beauty Co., Inc. v. Beautyco, Inc.*,

304 F.3d 964, 971 (10th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "An issue of material fact is

genuine if a reasonable jury could return a verdict for the non-movant." *Jenkins v. Wood*, 81 F.3d

988, 990 (10th Cir. 1996) (citation omitted). A fact is material if it "might affect the outcome of

the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party has 'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.

Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). The moving party can meet

its burden by "point[ing] to an absence of evidence to support the non-movant's claim." *Id.*

(quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). After the

moving party has met its burden, the non-moving party must "bring forward specific facts

showing a genuine issue for trial as to those dispositive matters for which it carries the burden of

proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). The Court must

"construe the evidence and the reasonable inferences drawn therefrom in the light most favorable

to the nonmovant," *Sally Beauty Co.*, 304 F.3d at 972 (citing *King of the Mountain Sports, Inc. v.

Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999)), but conclusory statements and attorney

arguments submitted by the nonmoving party do not create a genuine issue of material fact, *see Adler v. Wal-mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998).

  "[I]n determining whether a material issue of facts exists, a court may not disregard an affidavit simply "because it conflicts with the affiant's prior sworn statements," a court may "disregard a contrary affidavit when [it] conclude[s] that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). To determine whether an affidavit is an attempt to create a sham fact issue, courts should consider the following relevant factors: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*; *see also Jackson v. Dillard's Dep't Stores, Inc.*, 92 Fed. Appx. 583, 586-87 (10th Cir. 2003) (applying the *Franks* test and concluding that the district court did not abuse its discretion in finding that plaintiff's "affidavit was an attempt to create a sham issue of fact in order to survive summary judgment").

## TIMELINESS OF CLAIMS

Defendants first argue that they are entitled to summary judgment because Ms. Drescher's claims are time barred. A plaintiff asserting a Title VII claim under the circumstances applicable in this case must file a charge "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Duncan v. Manager Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Title VII requires a litigant to file a claims within 300 days of the alleged discriminatory conduct.").

Defendants initially argued that several of Ms. Drescher's claims were time barred because they occurred more than 300 days before Ms. Drescher filed a Charge of Discrimination

with the Equal Employment Opportunity Commission ("EEOC"). However, in a previous order

in this case, the court concluded that Ms. Drescher's "March 2013 Intake Questionnaire and

supplemental addendum could themselves be reasonably construed as a Charge." Mem. Decision

and Order, at 9, Nov. 2, 2015, ECF No. 30. Therefore, the proper point of reference for

determining whether Ms. Drescher filed a charge within 300 days of Defendants' alleged

conduct is the Intake Questionnaire that Ms. Drescher filed with the EEOC on March 25, 2013,

and not the Charge of Discrimination that Ms. Drescher filed with the EEOC on October 7, 2013.

Even using the Intake Questionnaire as the point of reference, Defendants still argue that

some of Ms. Drescher's claims are time barred, such as her failure-to-promote claim based on

her January 2011 application. Defendants also argue that Ms. Drescher has the burden of

establishing that her claims are timely and that she has not established that some of her

allegations in support of her hostile work environment claim occurred within 300 days of her

Intake Questionnaire. In her deposition, Ms. Drescher specifically testified that she did not know

when the last time the conduct supporting her allegations occurred.

Although the court agrees with Defendants that at least some of Ms. Drescher's

allegations are time barred, the court does not deem it necessary to consider the timeliness of

each allegation because the court concludes that Defendants are otherwise entitled to summary

judgment on all of Ms. Drescher's claims as discussed below.

## EMPLOYER LIABILITY UNDER TITLE VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for

an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e-2(a)(1) (2012). By its express terms, "[t]he relief granted under Title VII is against the *employer*, not the individual employees whose actions would constitute a violation of the Act." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) (citation omitted). Therefore, according to the Tenth Circuit, "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* (citation omitted). Applying this principle, the Tenth Circuit  has described the naming of supervisors in their official capacity as "superfluous" when "the employer is already subject to suit directly in its own name," *Lewis v. Four B Corp.*, 211 Fed. Appx. 663, 665 n.2 (10th Cir. 2005), and has established a general "rule that personal capacity suits against individual supervisors are inappropriate under Title VII," *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996).

In this case, Ms. Drescher has alleged Title VII claims for discrimination, harassment, and retaliation against all Defendants. Because all of her claims arise under Title VII, the claims can only be maintained against her employer, Clinton City. The other Defendants are not Ms. Drescher's employer. For example, Clinton Fire Department is not Ms. Drescher's employer because it is a department of Clinton City. The individual defendants are also not Ms. Drescher's employer. Ms. Drescher argues that the individual defendants were named in their official capacity, although that is not expressly stated in the Complaint. But, even if the individual defendants were named in their official capacity, that would make their presence as defendants superfluous, at best, and inappropriate, at worst. Therefore, the court concludes that, because Clinton City, as the employer, is the proper Defendant in this Title VII action, the four individual defendants and Clinton Fire Department should be dismissed as defendants.

**GENDER DISCRIMINATION – FAILURE TO PROMOTE**

Failure to promote claims under Title VII follow the burden-shifting framework established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See Tran v. Sonic Industries Services, Inc.*, 490 Fed. Appx. 115, 118 (10th Cir. 2012) (applying the *McDonnell Douglas* burden-shifting framework to a failure to promote claim under Title VII). Under that framework, the plaintiff "must carry the initial burden under [Title VII] of establishing a prima facie case" of prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 802. For a plaintiff to establish a prima facie case for failure to promote, the plaintiff must demonstrate "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005). "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The plaintiff must then show that the "stated reason for [plaintiff's] rejection was in fact pretext." *Id.* at 804. Courts "typically infer pretext in these contexts only when the criteria on which the employers ultimately rely are entirely subjective in nature." *Carter v. Mineta*, 125 Fed. Appx. 231, 237 (10 th Cir. 2005) (citation omitted). "In the final analysis, it is not Plaintiff's perception of her qualifications but that of the managers that matter in determining pretext." *Id.*

To present her prima facie case, Ms. Drescher demonstrates that, as a part-time firefighter, she twice applied and tested for a position as a full-time firefighter with Clinton City, once in January 2011 and once in September 2012. In both instances, male applicants were given the positions instead of Ms. Drescher. Therefore, Ms. Drescher argues that she was denied the

position based on her gender. Defendants argue that Ms. Drescher did not meet her burden of establishing a prima facie case because she was not qualified for the full-time position, and, even if she was qualified, Defendants claim that she was not promoted for the legitimate, nondiscriminatory reason that she had lower scores on her tests than the applicants who were given the positions. Specifically, in January 2011, Ms. Drescher's score placed her fifth out of five applicants, and, in September 2012, Ms. Drescher's score was lower than the applicant who was hired. Ms. Drescher argues that the test scores are pretext because they were intentionally lowered to prevent her from being promoted.

As evidence that Ms. Drescher's test scores were intentionally lowered, Ms. Drescher points to the document where her test scores were recorded for her September 2012 testing. In two places, a score was circled and then crossed out or erased, and a lower score was circled instead. In another place, Ms. Drescher argues that she should have been given a 5 when she was actually given a 4. Even if each of the scores that Ms. Drescher identifies were changed to the higher score, Ms. Drescher's total score would only have been three points higher. Ms. Drescher's score was over 75 points lower than the applicant who was hired.

Given the facts above, the court concludes that Ms. Drescher has not met her burden of showing that the legitimate, nondiscriminatory reasons offered by Defendants for not promoting Ms. Drescher to a full-time firefighter were pretext for gender discrimination. Clinton City used a scoring system to rate applicants, and, even giving Ms. Drescher the benefit of the higher scores that were allegedly changed, Ms. Drescher scored significantly below the other applicants on both of her tests. Because the evidence suggests that Ms. Drescher's managers honestly perceived her to be the less qualified applicant, and because Ms. Drescher has not provided sufficient evidence to show that the scores were pretext for discrimination, the court concludes

that Defendants are entitled to summary judgment on Ms. Drescher's claim for gender

discrimination for failure to promote.

## GENDER DISCRIMINATION – TERMINATION

In the absence of direct evidence, a claim of gender discrimination in a termination, like a

failure to promote claim under Title VII,  also follows the burden-shifting framework of

*McDonnell Douglas*, which requires the plaintiff to prove a prima facie case, the defendant to

produce a legitimate, non-discriminatory reason for the termination, and the plaintiff to show that

the defendant's reason is pretext for gender discrimination. *See McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802-805 (1973); *see also Luke v. Hospital Shared Services, Inc.*, 513 Fed.

Appx. 763, 765 (10th Cir. 2013) (applying the *McDonnell Douglas* burden-shifting framework to

a termination claim under Title VII). "To set forth a prima facie case of discrimination, a plaintiff

must establish that (1) she is a member of a protected class, (2) she suffered an adverse

employment action, (3) she qualified for the position at issue, and (4) she was treated less

favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192

(10th Cir. 2012). "The relevant inquiry is not whether the employer's reasons were wise, fair or

correct, but whether it honestly believed those reasons and acted in good faith upon those

beliefs." *Luke*, 513 Fed. Appx. at 766 (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912,

924-25 (10th Cir. 2004)). The Tenth Circuit has explained that courts "may not act as a super

personnel department that second guesses employers' business judgments." *Richardson v.*

*Gallagher*, 553 Fed. Appx. 816, 824 (10th Cir. 2014).

To establish her prima facie case, Ms. Drescher shows that she was terminated from her

position as a part-time firefighter with Clinton City while similarly situated males were not

terminated. Defendants argue that Ms. Drescher has not shown that she was treated less

favorably than others not in the protected class because she has only identified two male firefighters who were terminated for job performance issues while Ms. Drescher was employed with Clinton City. Defendants also argue that Ms. Drescher was not qualified and that Clinton City had legitimate, nondiscriminatory reasons for terminating her employment because of her conduct. Specifically, Defendants discuss Ms. Drescher's domestic issues with her husband, a full-time Clinton City firefighter, that required police involvement and that caused problems at work; a threatened suicide and intoxication by Ms. Drescher that led to her husband staying home with her during one of his shifts; dishonest statements by Ms. Drescher to her other employer, Davis Hospital, regarding her schedule at the fire station; and an alleged affair between Ms. Drescher and a Davis County Sheriff Deputy that led to the Deputy's attempted suicide. In other words, Defendants argue that Ms. Drescher's employment with Clinton City was terminated for conduct that violated city policies, was dishonest, was inappropriate, and reflected poorly on Clinton City.

In her response, Ms. Drescher first argues that she has established a prima facie case of gender discrimination related to the termination of her employment. She says that she only listed two male firefighters who had lost their jobs due to performance issues because she was the only female employee there, other than a female who eventually moved and quit. She also argues that her domestic issues apply equally to her husband, a full-time firefighter with Clinton City, and that other male employees would also receive personal phone calls at work.

In her response, Ms. Drescher also spends more than an insignificant amount of time arguing about whether the various allegations regarding her conduct are correct. For example, Ms. Drescher argues that her dishonesty about her fire-station work schedule with her other employer was actually a misunderstanding. Ms. Drescher also argues that she was not, in fact,

suicidal on the night that her husband stayed with her during her shift and that she was not

actually involved in an affair with a Davis County Sheriff Deputy.

However, the relevant issue is not whether the allegations were accurate or correct but

whether Clinton City honestly believed that Ms. Drescher's conduct occurred as alleged when it

made the decision to terminate her employment. Although Ms. Drescher has provided some

evidence that she may not have done some of the things that Defendants claim she did, this is not

material. Ms. Drescher has not provided any evidence to dispute the fact that, at the time of the

termination of her employment, Clinton City honestly believed that Ms. Drescher had been

dishonest, brought her personal life into the workplace, violated Clinton City policies, and

engaged in other conduct that reflected poorly on Clinton City. Therefore, even if Ms. Drescher

succeeded in establishing a prima facie case of discrimination, she has failed to show that

Clinton City's reasons for terminating her employment were a pretext for gender discrimination,

so Defendants are also entitled to summary judgment on Ms. Drescher's termination claim.

### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

In order to succeed on a claim for sexual harassment that creates a hostile work

environment, a plaintiff must prove that "the totality of the circumstances" suggest that

"discrimination based on sex has created a hostile or abusive work environment." *Semsroth v.*

*City of Wichita*, 304 Fed. Appx. 707, 721-22 (10th Cir. 2008) (citations omitted). A plaintiff

establishes that a sexually hostile work environment existed by proving "(1) she is a member of a

protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on

sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term,

condition, or privilege of the plaintiff's employment and created an abusive working

environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (internal quotation

marks, alteration, and citation omitted); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." (citation omitted)).

"Under Title VII, harassment is actionable only when it is 'sufficiently severe or pervasive' such that a reasonable person would find the work environment to be hostile or abusive *and* the employee in fact perceived it to be so." *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 650 (10th Cir. 2013). To determine whether a reasonable person would find the work environment to be hostile or abusive, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 651-52 (citation omitted). "Run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Gaff v. St. Mary's Reg'l Med. Ctr.*, 506 Fed. Appx. 726, 728 (10th Cir. 2012) (alteration and citation omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted). "Properly applied, [these standards for judging hostility] will filter our complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id.* (citation omitted). A court analyzing a sexual harassment claim may also take into account the "work environment." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1538 (10 th Cir. 1995) (citation omitted) ("In the real world of construction work, profanity and vulgarity are not perceived as hostile or abusive.").

If a plaintiff does succeed in establishing a hostile work environment claim based on vicarious liability, "an employer can take advantage of an affirmative defense—the *Faragher* defense—by showing both that the employer 'exercised reasonable care to avoid harassment and to eliminate it when it might occur' and that the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards.'" *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998)).

Ms. Drescher claims that she was subject to the following conduct at work, which she argues constitutes sexual harassment and a hostile work environment: belittling comments; sexual references; crude jokes; sexually oriented jokes; questions about her sex life; derogatory remarks about females; discussions about looking down female patients' shirts; male employees walking in on her while she was showering, even after telling employees not to; sexually oriented pictures; male employees walking around wearing only a towel; and a lower standard locker room, bathroom, and changing area than the males. Ms. Drescher argues that the conduct she was subjected to became so severe that it led to her cutting her work schedule and eventually to her being fired.

Defendants first argue that Ms. Drescher is relying on sham facts in her declaration that inexcusably contradict the admissions she made under oath during her deposition. Specifically, in Ms. Drescher's deposition, she complained of isolated incidents, and she typically could not recall when the specific incidents took place. In her declaration accompanying her response to Defendants' summary judgment motion, Ms. Drescher takes the position that the conduct was pervasive and that it occurred regularly, even daily. Defendants argue that these new facts are

sham facts because they directly contradict Ms. Drescher's deposition testimony without newly discovered evidence or a need to clear up confusion in her earlier testimony.

Defendants then argue that Ms. Drescher cannot show that any of the conduct complained of occurred because of her gender. *See Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'"). Specifically, Defendants note that none of the comments were directed at Ms. Drescher, that male firefighters used the same locker room that Ms. Drescher used even when she was not there, and that Ms. Drescher has not shown that the firefighters only walked around wearing a towel when she was at work. Defendants also note that Ms. Drescher has not provided any evidence that the photographs on the wall were posted to harass Ms. Drescher, especially given the facts that the women were clothed and the photographs were taken down when Ms. Drescher commented on them.

Defendants further argue that Ms. Drescher failed to meet her burden of establishing that the purported harassment was sufficiently severe or pervasive. According to the Defendants, the conduct complained of amounts to nothing more than simple teasing, offhand comments, and isolated incidents, which are insufficient to constitute sexual harassment or create a hostile work environment. Defendants argue that this is especially true in the work environment of a fire station where employees are in close quarters for long hours and where the workplace includes locker rooms, showers, and a laundry room. Defendants also argue that the Fire Chief only asked about the paternity of Ms. Drescher's child on one occasion because it became an issue in the workplace that impacted a Deputy in the Davis County Sheriff's Department, which works closely with the Clinton Fire Department, and her husband, who is a full-time firefighter for Clinton City.

Finally, Defendants argue that the *Faragher* defense applies because Clinton City has a policy for reporting sexual harassment, which requires employees to report sexual harassment to their department head or the City Manager, and Ms. Drescher failed to provide evidence that she took advantage of the corrective opportunities provided by Clinton City.

The court concludes that Defendants are entitled to summary judgment on the sexual harassment and hostile work environment claim. The court agrees that Ms. Drescher's declaration, in addition to including statements that are not material or that are conclusory, also attempted to create sham facts. Specifically, Ms. Drescher's statements regarding the daily occurrence of allegedly harassing conduct directly contradicts her previous statements in her deposition where she described the harassment as isolated incidents and stated that she could not identify the dates of the incidents. Because the inconsistencies in Ms. Drescher's declaration are not due to a lack of evidence at the time of the deposition or an attempt to clear up confusion in Ms. Drescher's earlier testimony, the statements in Ms. Drescher's declaration can be considered sham facts.

Disregarding the sham facts in Ms. Drescher's declaration, the court concludes that Ms. Drescher has not shown that the purported harassment was sufficiently pervasive or severe to alter the conditions of Ms. Drescher's or create an abusive work environment, especially given the typical work environment that exists in a fire station. Ms. Drescher has also failed to show that she sufficiently took advantage of Clinton City's harassment policy. Therefore, the court concludes that Defendants are entitled to summary judgement on Ms. Drescher's claim for sexual harassment and a hostile work environment.

**RETALIATION**

Claims for retaliation under Title VII also follow the *McDonnel Douglas* framework described in detail above. "To demonstrate a prima facie case of [Title VII] retaliation, a plaintiff must show '(1) [she] engaged in protected opposition to Title VII discrimination; (2) [she] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.'" *McCauley v. Board of Com'rs for Bernalillo County*, 603 Fed. Appx. 730, 734-35 (10th Cir. 2015) (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004)). To show a causal connection, a plaintiff may rely on the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" as long as "the temporal proximity [is] 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the defendant's employment decision. *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). After the defendant articulates a legitimate, non-retaliatory motive for its actions, the burden shifts back to the plaintiff to show such reason is merely a pretext for retaliation. *Id.* at 639. To show pretext, the plaintiff must "produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered stated reasons, that a reasonable jury could find them unconvincing." *Id.* Despite the burden-shifting framework, "[t]he burden of proof to establish . . . retaliation 'remains at all times with the plaintiff.'" *See Kenfield v. Colorado Dept. of Public Health & Environment*, 557 Fed. Appx. 728, 731 (10th Cir. 2014) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)).

17

The Tenth Circuit has explained that courts "may not act as a super personnel department that second guesses employers' business judgments." *Richardson v. Gallagher*, 553 Fed. Appx. 816, 824 (10th Cir. 2014). The United States Supreme Court recently held that for a Title VII retaliation claim, a plaintiff must establish that the defendant would not have taken the adverse employment action "but for" the impermissible motive. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Although Ms. Drescher claims that she told one supervisor about co-workers making crude jokes and another supervisor that she was no longer showering at work because she was tired of being walked in on, Defendants argue that Ms. Drescher has not provided any evidence to link her verbal statements to her eventual termination in 2013. Therefore, Defendants argue that Ms. Drescher failed to even establish her prima facie case. However, even if Ms. Drescher were able to establish her prima facie case, Defendants argue that Clinton City has articulated legitimate, non-retaliatory reasons for its termination decision, and Ms. Drescher cannot establish that those reasons are pretext for retaliation and that, but for her statements, her employment would not have ended.

The court agrees that Ms. Drescher failed to meet her burden to establish a prima facie case or that Clinton City's reasons for terminating her employment were pretext for retaliation. Ms. Drescher did not establish temporal proximity between her statements and the eventual termination of her employment, and she has not pointed to any other admissible evidence that links her statements to her eventual termination. Ms. Drescher has also failed to show that Clinton City's non-retaliatory reasons for terminating her employment are pretext for retaliation or that, but for her statements, her employment would not have ended. Therefore, Defendants are entitled to summary judgment on Ms. Drescher's retaliation claim.

**PUNITIVE DAMAGES**

Although Title VII allows for punitive damages in some circumstances, Title VII specifically excludes punitive damages when the respondent is "a government, government agency, or political subdivision." 42 U.S.C. § 1981a(b)(1). Defendants argue that Clinton City falls into the category of entities excluded from punitive damages under Title VII. In her response, Ms. Drescher conceded that Defendants are entitled to summary judgment on Ms. Drescher's punitive damages claim, and the court agrees.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to close the case and enter judgment in favor of Defendants.

DATED this 10th day of March, 2017.

BY THE COURT:

DALE A. KIMBALL
United States District Judge